# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT
_____

## AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,

Plaintiff-Appellee,

v.

## TRANS STATES AIRLINES, LLC,

Defendant-Appellant.
_____

### ON APPEAL FROM THE UNITED STATES DISTRICT
### COURT FOR THE EASTERN DISTRICT OF MISSOURI
### DISTRICT COURT FILE NO. 4:06cv872 TCM
_____

### BRIEF FOR PLAINTIFF-APPELLEE
### AIR LINE PILOTS ASSOCIATION, INTERNATIONAL
_____

JAMES K. LOBSENZ
(DC Bar No. 432654)
MARCUS C. MIGLIORE
(DC Bar No. 411674)
Air Line Pilots Association, Int'l
535 Herndon Parkway
Herndon, VA 20170
Telephone: (703) 481-2423
jim.lobsenz@alpa.org
marcus.migliore@alpa.org

Attorneys for Plaintiff-Appellee
Air Line Pilots Association, Int'l

Dated:  July 9, 2009

## SUMMARY OF THE CASE AND
## STATEMENT CONCERNING ORAL ARGUMENT

Defendant-Appellant Trans States Airlines, LLC ("TSA") challenges a "final and binding" arbitration backpay award to pilot Paul Hopkins or his collective bargaining representative, Plaintiff-Appellee Air Line Pilots Association, International ("ALPA"). TSA alleges that enforcing the award violates the public policy of the Labor Management Reporting and Disclosure Act ("LMRDA") because ALPA made an illegal "loan" to Hopkins during the backpay period.

TSA's appeal is baseless. The *Hopkins* arbitration board (as well as an earlier board in a separate TSA discharge case) held that ALPA's payments to the pilots were not "loans," and did not violate the LMRDA, because the pilots lacked an absolute obligation to repay. TSA disputes that "public policy" determination here, but since it submitted that issue to the arbitration board for decision, the board's award may only be overturned if it was in "manifest disregard for the law." TSA does not even claim to meet that test, and the Board's decision was entirely correct in any event. Moreover, because TSA previously fully litigated, and lost, its LMRDA claim in a prior arbitration, the doctrine of issue preclusion bars TSA's appeal, and TSA in any event lacks standing to raise its LMRDA claim.

Oral argument is unnecessary to decide this baseless appeal.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Local Rule 26.1A of the Rules of this Court, Plaintiff-Appellee ALPA advises the Court that it is an unincorporated, non-profit labor union within the meaning of the Railway Labor Act, 45 U.S.C. §§ 151-188, and represents commercial airline pilots.  ALPA has no subsidiary companies or affiliates within the meaning of Rule 26.1.

Appellate Case: 10-1700    Page: 3    Date Filed: 07/13/2010 Entry ID: 3682963

# TABLE OF CONTENTS

**PAGE**

SUMMARY OF THE CASE AND STATEMENT
  CONCERNING ORAL ARGUMENT .................................................. i

CORPORATE DISCLOSURE STATEMENT ..................................... ii

TABLE OF AUTHORITIES .................................................. vi

KEY TO ABBREVIATIONS AND TERMS USED IN BRIEF ........... xi

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION (INCLUDING JUSTICIABILITY) ............................ 1

STATEMENT OF THE ISSUES............................................. 2

STATEMENT OF THE CASE............................................... 4

STATEMENT OF FACTS .................................................... 5

I.     THE PARTIES .......................................................... 5

II.    GRIEVANCE AND ARBITRATION PROVISIONS
      OF THE ALPA-TSA COLLECTIVE BARGAINING
      AGREEMENT............................................................ 5

III.   THE *HOPKINS* AND *CVETANOVIC* SYSTEM
      BOARD PROCEEDINGS ............................................. 6

IV.   THE SYSTEM BOARD'S BACKPAY PROCEEDINGS.......... 8

      A.     The Backpay Award ........................................... 8

      B.     The System Board's Rejection of TSA's Claims............... 9

Appellate Case: 10-1700    Page: 4    Date Filed: 07/13/2010 Entry ID: 3682963

      1.      ALPA's Section 60 Payments to
Captain Hopkins.......................................................... 10

      2.      The System Board's Rejection of TSA's
LMRDA Claim ......................................................... 11

V.    THE *KAGAN* SYSTEM BOARD'S REJECTION OF TSA'S
LMRDA CLAIM ............................................................ 13

VI.   THE DISTRICT COURT'S ENFORCEMENT OF THE
*HOPKINS* BACKPAY AWARD ................................................ 14

SUMMARY OF ARGUMENT ............................................................. 16

ARGUMENT ...................................................................... 17

THE DISTRICT COURT CORRECTLY ENFORCED THE
SYSTEM BOARD AWARD ................................................................ 17

    A.     The Standard of Review of Railway Labor Act
Arbitration Awards ............................................................. 17

      1.      TSA Does Not Dispute that Its Challenge to
the Award Falls Outside of the Three
Statutory Bases for Overturning a Railway
Labor Act Arbitration Award................................... 17

      2.      A Challenge to the System Board's Determination
that Its Award Does Not Violate Public Policy
Is Subject Only to a "Manifest Disregard of the
Law" Standard of Review ........................................ 18

    B.     The Board's Award Was Not in Manifest Disregard
of the Law and Did Not Violate Public Policy.................. 22

Appellate Case: 10-1700    Page: 5    Date Filed: 07/13/2010    Entry ID: 3682963

1.     The System Board's Holding that the Section 60 Payments Were Not a "Loan" Neither Manifestly Disregarded Governing Law Nor Violated a Well-Defined and Dominant Public Policy .............. 23

2.     Even Apart from TSA's "Loan" Claim, Enforcing the System Board Award Does Not Violate Public Policy ....................................................................... 27

C.     TSA Is Barred from Raising Its LMRDA Claim ............... 31

    1.     The Doctrine of Issue Preclusion Bars the Claim.... 32

    2.     TSA Lacks Standing to Raise Its LMRDA Claim ....................................................................... 35

        a.     TSA has not suffered an actual or threatened injury fairly traceable to the Section 60 payments to Captain Hopkins ........................ 36

        b.     TSA is outside the zone of interests protected by Section 503(a) of the LMRDA ............................................................ 37

        c.     TSA has waived any right to assert prudential standing ........................................ 39

CONCLUSION ....................................................................... 40

CERTIFICATE OF COMPLIANCE ....................................................... 41

CERTIFICATE OF SERVICE ............................................................. 42

Appellate Case: 10-1700    Page: 6    Date Filed: 07/13/2010    Entry ID: 3682963

# TABLE OF AUTHORITIES

**CASES:**                                           **PAGE**

American Fed. of TV & Radio Artists Health and Ret.
  Funds v. WCCO TV, Inc., 934 F.2d 987 (8th Cir. 1991) ........... 2-3, 32, 33

American Postal Workers Union v. USPS, 682 F.2d
  1280 (9th Cir. 1982) ..................................................... 21

Association for Retarded Citizens v. Dallas County
  Mental Health & Mental Retardation Ctr. Bd.
  of Trustees, 19 F.3d 241 (5th Cir. 1994) .................................... 3, 39

Bennett v. Spear, 520 U.S. 154 (1997) ........................................ 3, 35

Biscanin v. Merril Lynch & Co., 407 F.3d 905
  (8th Cir. 2005) .......................................................... 2, 22, 25

Boise Cascade Corp. v. PACE, Local 7-0159, 309 F.3d
  1075 (8th Cir. 2002) ..................................................... 20

BMWE v. Soo Line R.R., 266 F.3d 907 (8th Cir. 2001) ............. 18

BMWE v. Terminal R.R. Ass'n, 307 F.3d 737
  (8th Cir. 2002) .......................................................... 17

Cole v. UAW, Local 110, 533 F.3d 932 (8th Cir. 2008) ............. 3, 39

Crawford Group, Inc. v. Holekamp, 543 F.3d 971 (8th
  Cir. 2008) ................................................................ 22

Daniel Constr. Co. v. Local 257, IBEW, 856 F.2d 1174
  (8th Cir. 1988) .......................................................... 27, 28

Davis v. U.S. Bancorp, 383 F.3d 761 (8th Cir. 2004) ................. 35, 38

Delta Air Lines, Inc. v. ALPA, 861 F.2d 665
  (D.C. Cir. 1988) ......................................................... 21, 28

Appellate Case: 10-1700　　Page: 7　　Date Filed: 07/13/2010 Entry ID: 3682963

**CASES (cont'd)**:                                                    **PAGE**

Dubinsky v. Mermart, LLC, 595 F.3d 812
  (8th Cir. 2010)...............................................................    3, 39

Duluth, Missabe & Iron Range Ry. v. IBLE,
  264 F.3d 782 (8th Cir. 2001) .......................................    18

Eastern Associated Coal Corp. v. UMW, Dist. 17,
  531 U.S. 57 (2000)........................................................    2, 19, 25

Exxon Shipping Co. v. Exxon Seamen's Union,
  11 F.3d 1189 (3d Cir. 1993).........................................    21

Finley Lines Jt. Prot. Bd. Unit 200 v. Norfolk
  S. Ry., 312 F.3d 943 (8th Cir. 2002) .........................    17, 18

Franklin Elec. Co. v. UAW, 886 F.2d 188 (8th Cir. 1989) ..........    20

Friends of Lake View School Dist., Incorp. No. 25 v.
  Beebe, 578 F.3d 753 (8th Cir. 2009) .........................    31

Gas Aggreg. Servs., Inc. v. Howard Avista Energy,
  LCC, 319 F.3d 1060 (8th Cir. 2003).............................    21

Gibralter Sav. v. Commonwealth Land Title Ins. Co.,
  907 F.2d 844 (8th Cir. 1990) .......................................    25

Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576
  (2008) ..............................................................................    22

Homestake Mining Co. v. United Steelworkers, Local 7044,
  153 F.3d 678 (8th Cir. 1998) .......................................    2, 20, 24

IBT Local 878 v. Commercial Warehouse Co.,
  84 F.3d 299 (8th Cir. 1996) .........................................    27

Iowa Elec. & Power Co. v. Local Union 204, IBEW,
  834 F.2d 1424 (8th Cir. 1987) .....................................    21

Appellate Case: 10-1700    Page: 8    Date Filed: 07/13/2010 Entry ID: 3682963

**CASES (cont'd)**:                                                   **PAGE**

Irving v. Dormire, 586 F.3d 645 (8th Cir. 2009) ..........................  35

Jewell v. United States, 548 F.3d 1168 (8th Cir. 2008)...............  3, 35

Kiernan v. Piper Jaffray Cos., 137 F.3d 588
  (8th Cir. 1998)...............................................................  2, 19

Lincoln Nat'l Life Ins. Co. v. Payne, 374 F.3d 672
  (8th  Cir. 2004)...............................................................  22

Major League Baseball Players Ass'n v. Garvey, 532 U.S.
  504 (2001) ...................................................................  18

McBurney v. Stew Hansen's Dodge City, Inc.,
  398 F.3d 998 (8th Cir. 2005) .......................................  39

MidAmerican Energy Co. v. IBEW Local 499,
  345 F.3d 616 (8th Cir. 2003) .......................................  25, 28

Nolles v. State Comm. for Reorganization of School Dists.,
  524 F.3d 892 (8th Cir. 2008) .......................................  37

PaineWebber, Inc. v. Agron, 49 F.3d 347 (8th Cir. 1995) ...........  26

Regional Inv. Co. v. Haycock, 723 F.2d 38 (8th Cir. 1983)........  25

Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031
  (8th Cir. 2002)...............................................................  3, 38

Royal Ins. Co. v. Kirksville Coll. of Osteopathic Med.,
  Inc., 304 F.3d 804 (8th Cir. 2002) ...............................  33

Schultz v. Windstream Commc'ns, Inc.,
  600 F.3d 948 (8th Cir. 2010) .......................................  35

St. John's Mercy Med. Ctr. v. Delfino, 414 F.3d 882
  (8th Cir. 2005)...............................................................  2, 21, 23

Appellate Case: 10-1700    Page: 9    Date Filed: 07/13/2010 Entry ID: 3682963

**CASES (cont'd):**      **PAGE**

Stolt-Nielsen, S.A. v. Animalfeeds Int'l Corp.,
130 S. Ct. 1758 (2010).................................................... 22

Stark v. Sandberg, Phoenix & Von Gontard, P.C.,
381 F.3d 793 (8th Cir. 2004) ...................................... 20, 25

Summerville v. Trans World Airlines, Inc.,
219 F.3d 855 (8th Cir. 2000) .................................. 2, 32, 33

Trailways Lines, Inc. v. Trailways, Inc. Joint Council,
807 F.2d 1416 (8th Cir. 1986) ...................................... 34

Union Pac. R.R. v. UTU, 3 F.3d 255 (8th Cir. 1993)................... 2, 18, 19

United Paperworkers Int'l Union v. Misco, Inc.,
484 U.S. 29 (1987)................................................. 2, 19

United States v. Basin Elec. Power Co-op.,
248 F.3d 781 (8th Cir. 2001) ...................................... 15, 26

United States v. Hays, 515 U.S. 737 (1995)............................. 36

United States v. IBT, 817 F. Supp. 337 (S.D.N.Y. 1993) ............ 24

United States v. Metropolitan St. Louis Sewer Dist.,
569 F.3d 829 (8th Cir. 2009) ...................................... 37

United States *ex. rel.* Ramseyer v. Century Healthcare
Corp., 90 F.3d 1514 (10th Cir. 1996) ......................... 3, 39

USPS v. NALC, 847 F.2d 775 (11th Cir. 1988).......................... 21

Wellons, Inc. v. T.E. Ibberson Co., 869 F.2d 1166
(8th Cir. 1989)............................................... 32, 33, 34

Wilcox Elec., Inc. v. FAA, 119 F.3d 724 (8th Cir. 1997) ............ 37

Appellate Case: 10-1700   Page: 10   Date Filed: 07/13/2010   Entry ID: 3682963

**CASES (cont'd):**                                              **PAGE**

Williams v. National Football League, 582 F.3d 863
  (8th Cir. 2009).................................................................. 19, 22

Wisdom v. First Midwest Bank, 167 F.3d 402
  (8th Cir. 1999).................................................................. 25

W.R. Grace and Co. v. Local Union 759, Rubber Workers,
  461 U.S. 757 (1983)....................................................... 2, 19, 29

Zanders v. Swanson, 573 F.3d 591 (8th Cir. 2009)...................... 3, 36

**CONSTITUTION AND STATUTES:**                                   **PAGE**

U.S. Const., art. III, § 2............................................... 3

28 U.S.C. § 1291........................................................ 1

28 U.S.C. § 1331........................................................ 1

29 U.S.C. § 503(a) .................................................... *passim*

45 U.S.C. §§ 151-188 .................................................. ii, 1

45 U.S.C. § 151 Sixth ................................................. 5

45 U.S.C. § 152 Third.................................................. 30

45 U.S.C. § 152 Tenth ................................................. 30

45 U.S.C. § 153 First (q).............................................. 18

45 U.S.C. § 181 ....................................................... 5

45 U.S.C. § 184........................................................ 1, 6

**MISCELLANEOUS:**

Black's Law Dictionary (6th ed. 1991) ................................ 23

Appellate Case: 10-1700    Page: 11    Date Filed: 07/13/2010 Entry ID: 3682963

# KEY TO ABBREVIATIONS AND TERMS USED IN BRIEF

| Term | Complete Definition |
|------|---------------------|
| ALPA | Plaintiff-Appellee Air Line Pilots Association, International |
| Board | Trans States Pilots' System Board of Adjustment |
| CBA | Collective Bargaining Agreement between Trans States Airlines, LLC and the Air Line Pilots Association, International |
| Company | Defendant-Appellant Trans States Airlines, LLC |
| Hopkins | Captain Paul Hopkins |
| JA | Joint Appendix of the parties filed with this Appeal |
| LEC | Local Executive Council |
| LMRDA | Labor Management Reporting and Disclosure Act, 29 U.S.C. §§ 401-531 |
| Spirit | Spirit Airlines, Inc. |
| System Board | Trans States Pilots' System Board of Adjustment |
| Trans States | Defendant-Appellant Trans States Airlines, LLC |
| TSA | Defendant-Appellant Trans States Airlines, LLC |

Appellate Case: 10-1700     Page: 12     Date Filed: 07/13/2010 Entry ID: 3682963

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION (INCLUDING JUSTICIABILITY)

The District Court had subject matter jurisdiction in this case pursuant to the Railway Labor Act, 45 U.S.C. §§ 151-188 ("RLA"), because this is a challenge to an award of an arbitral system board of adjustment established pursuant to 45 U.S.C. § 184 and accordingly raised a federal question under 28 U.S.C. § 1331. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1291 because the appeal is of the final judgment of the District Court.

This appeal does not present a justiciable case or controversy because (as explained in detail in Section D.2 of the Argument) Defendant-Appellant TSA lacks constitutional and prudential standing to raise the issue on which it appeals: whether the District Court correctly enforced the arbitration decision and award of the TSA Pilots' System Board of Adjustment ("System Board" or "Board") holding that ALPA's payments to Grievant Paul Hopkins following his discharge from TSA were not a loan in violation of the public policy as set forth in Section 503(a) of the LMRDA. TSA also has waived its right to make arguments in support of its prudential standing because it did not make any such arguments in the District Court proceedings.

# STATEMENT OF THE ISSUES

1.      Whether the "final and binding" backpay award of the System Board in the grievance over the discharge of Captain Paul Hopkins was in "manifest disregard" of the law and accordingly not enforceable?  29 U.S.C. § 503(a); *St. John's Mercy Med. Ctr. v. Delfino*, 414 F.3d 882 (8th Cir. 2005); *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905 (8th Cir. 2005); *Homestake Mining Co. v. United Steelworkers, Local 7044*, 153 F.3d 678 (8th Cir. 1998); *Kiernan v. Piper Jaffray Cos.*, 137 F.3d 588 (8th Cir. 1998).

2.      Whether, if the Court decides not to apply the above "manifest disregard" standard of review, the System Board's award was contrary to a well-defined and dominant public policy, as expressed in statutes and legal precedents, and accordingly should not be enforced?  29 U.S.C. § 503(a); *Eastern Associated Coal Corp. v. UMW, Dist. 17*, 531 U.S. 57 (2000); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 (1987); *W.R. Grace and Co. v. Local Union 759, Rubber Workers,* 461 U.S. 757 (1983); *Union Pac. R.R. v. UTU*, 3 F.3d 255 (8th Cir. 1993).

3.      Whether the System Board's final, binding, and unappealed award in the earlier *Kagan* case precludes Defendant-Appellant TSA from raising the same issue in the present litigation?  *Summerville v. Trans World Airlines, Inc.*, 219 F.3d 855 (8th Cir. 2000); *American Fed. of TV & Radio Artists Health and Ret. Funds v.*

Appellate Case: 10-1700    Page: 14    Date Filed: 07/13/2010 Entry ID: 3682963

*WCCO TV, Inc.*, 934 F.2d 987 (8th Cir. 1991); *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166 (8th Cir. 1989).

4.     Whether TSA has constitutional and prudential standing to challenge the System Board award based on the alleged violation of Section 503(a) of the LMRDA by Plaintiff-Appellee ALPA due to ALPA's payments to Captain Hopkins from 2005-07?  United States Const., art. III, § 2; 29 U.S.C. § 503(a); *Bennett v. Spear*, 520 U.S. 154 (1997); *Zanders v. Swanson*, 573 F.3d 591 (8th Cir. 2009); *Jewell v. United States*, 548 F.3d 1168 (8th Cir. 2008); *Rosebud Sioux Tribe v. McDivitt*, 286 F.3d 1031 (8th Cir. 2002).

5.     Whether TSA waived its right to argue in favor of prudential standing by failing to make any such arguments to the District Court?  *Dubinsky v. Mermart, LLC*, 595 F.3d 812 (8th Cir. 2010); *Cole v. UAW, Local 110*, 533 F.3d 932 (8th Cir. 2008); *United States ex. rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514 (10th Cir. 1996); *Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241 (5th Cir. 1994).

Appellate Case: 10-1700     Page: 15     Date Filed: 07/13/2010 Entry ID: 3682963

## STATEMENT OF THE CASE

In this appeal, Defendant-Appellant TSA continues a series of challenges to arbitration awards by seeking to have a third "final and binding" System Board award vacated. In September 2007, the District Court: (1) enforced two earlier awards, one of which required reinstatement with backpay (plus interest) of discharged pilot Paul Hopkins; (2) remanded the cases to the Board to calculate backpay; and (3) retained jurisdiction in the event of a further dispute.

On remand, the System Board (in what became its third award challenged by TSA in this litigation) ordered TSA to pay $162,249.59 plus interest to ALPA or Hopkins. The Board held: (1) Hopkins adequately mitigated his damages; and (2) ALPA's payments to him during the backpay period were not an illegal "loan" under the LMRDA and accordingly did not violate public policy.

TSA refused to comply with the backpay award. The matter went back to the District Court, which (on cross-motions for summary judgment) rejected TSA's LMRDA and "failure to mitigate" claims and ordered TSA to comply with the backpay award.

4

## I.  THE PARTIES

Plaintiff-Appellee ALPA is an unincorporated labor organization representing commercial pilots.  ALPA is the representative of the pilots employed by TSA within the meaning of Sections 1, Sixth and 201 of the RLA, 45 U.S.C. §§ 151, Sixth and 181.  TSA's Brief at 5.  TSA is a common carrier by air engaged in interstate commerce within the meaning of Section 201 of the RLA, 45 U.S.C. § 181.  *Id.*

## II.  GRIEVANCE AND ARBITRATION PROVISIONS OF THE ALPA-TSA COLLECTIVE BARGAINING AGREEMENT

ALPA and TSA are parties to a collective bargaining agreement ("CBA").  *Id.*; Joint Appendix ("JA") III at 14 (¶ 3), 25-26.  The CBA includes Sections 20 and 21, respectively entitled "Grievances" and "System Board of Adjustment."  JA III at 380-87.

Section 20.B.4 of the CBA provides:

> **B.  Discipline and Discharge**
>
> \* \* \*
>
> 4.  If, as a result of any hearing or appeal therefrom as provided herein, a pilot is exonerated, he shall be compensated for lost wages and benefits, and, if he has been held out of service, he shall be reinstated without loss of seniority, longevity or other accruals.  Further, the pilot's personnel record shall be cleared of the charges, and all documents and references relating thereto shall have no precedent value and shall not be referred

5

to in any subsequent proceedings under this agreement. [JA III at 381-82.]

Section 21 of the CBA establishes the System Board, in compliance with the mandatory and exclusive arbitral dispute adjustment requirements of the RLA. *See* 45 U.S.C. § 184. The CBA states, in particular, that the Board's purpose is to "adjust[] and decide[] disputes which may arise under the terms of the [CBA] and any amendments and additions thereto. . . ." JA III at 384 (§ 21.A). The Board has "jurisdiction over disputes which arise out of grievances or out of the interpretation or application of any of the terms of the [CBA]." *Id*. at 384 (§ 21.D). The CBA further provides that "[d]ecisions of the Board in all cases properly brought before it shall be final and binding." *Id*. at 386 (§ 21.K.).

## III. THE *HOPKINS* AND *CVETANOVIC* SYSTEM BOARD PROCEEDINGS

TSA employed Captain Paul Hopkins as a pilot from July 1998 until his discharge on March 16, 2005. TSA's Brief at 5. On March 18, 2005, ALPA filed a grievance in accordance with Section 20 of the CBA, contending that the termination was without just cause. JA I at 4 (Docket No. 1 (Compl. ¶ 11 and Ex. 7), Docket No. 4 (TSA Countercl. ¶ 19)). TSA did not grant the grievance at the preliminary stages of the grievance process, and ALPA submitted the grievance for arbitration before the System Board. JA I at 4 (Docket No. 1 (Compl. ¶ 12 and Ex. 8), Docket No. 4 (TSA Countercl. ¶ 9)).

6

In May 2006, following hearings and briefing by the parties, the System Board (Arbitrator John Flagler, Chairman) sustained the grievance. JA I at 4 (Docket No. 1 (Compl. ¶ 14), Docket No. 4 (TSA Answer ¶ 14)); JA IV at 454-77; JA I at 20 (¶ 14). The Board's award ordered TSA to reinstate Captain Hopkins and to make him "whole for all wage and benefit loss due to his discharge without cause." JA IV at 475.

TSA refused to comply with the System Board award. JA I at 4 (Docket No. 1 (Compl ¶ 15), Docket No. 4 (TSA Answer ¶ 15)), 20-21; JA II at 128. On June 5, 2006, ALPA filed the instant suit to enforce the *Hopkins* Board award (as well as a separate Board award involving TSA pilot Sergio Cvetanovic). JA I at 4 (Docket No. 1 (Compl., *passim*)).

In September 2007, the District Court issued a Memorandum Order and Judgment: (1) directing enforcement of the *Hopkins* (and *Cvetanovic*) System Board awards; and (2) ordering TSA to reinstate Hopkins and Cvetanovic "with backpay to be timely paid, as determined by the Trans States Pilots' System Board of Adjustment." The District Court also retained jurisdiction "for the sole purpose of ensuring compliance with the terms of this Judgment." JA V at 689, 691-727.

Appellate Case: 10-1700   Page: 19   Date Filed: 07/13/2010 Entry ID: 3682963

## IV. THE SYSTEM BOARD'S BACKPAY PROCEEDINGS

### A. <u>The Backpay Award</u>

On December 11, 2007 and February 22, 2008, the System Board held hearings concerning the amount of backpay and benefits due under its prior award in the *Hopkins* case, with Arbitrator Flagler again serving as the neutral Chairman. JA II at 189; JA III at 272, 291. At these hearings, both ALPA and TSA were present, represented by counsel, and afforded the opportunity to present evidence, testimony and argument. ALPA and TSA also submitted post-hearing briefs. JA II at 189-III at 323, *passim*; JA VII at 1073-1158.

On December 1, 2008, Arbitrator Flagler issued his opinion and award, which was subsequently joined (in pertinent part) by Board members Jason Ruszin and Andrew Freeman. Board members Eric Kukowski and Warren Crotty dissented. The award decided various issues concerning elements of, and offsets to, the backpay award mostly in ALPA's favor, and remanded the computation of the award to the parties. JA VII at 1160-83.

On December 9, 2008, ALPA counsel wrote to TSA counsel enclosing ALPA's calculation of the amount of backpay due pursuant to the award ($162,249.56). JA VIII at 1197-1202. One month later, ALPA counsel wrote to Board Chairman Flagler (copied to TSA counsel and the other Board members) enclosing a copy of the December 9, 2008 letter to TSA counsel and asking that

the Board enter an award directing TSA to pay Hopkins $162,249.56 plus interest at nine percent annually after December 31, 2008. *Id*. at 1185-1202.

By memorandum order dated January 20, 2009, Chairman Flagler found that ALPA's calculation of backpay comported in every particular with the System Board's findings and award and ordered TSA to pay to either ALPA or Captain Hopkins $162,249.56 plus nine percent interest after December 31, 2008. *Id.* at 1204-05. Board members Ruszin and Freeman joined in Chairman Flagler's memorandum order one week later. *Id.* at 1206.

### B.     The System Board's Rejection of TSA's Claims

In reaching its award summarized above, the System Board rejected, *inter alia*, two attempts by TSA to reduce or bar the backpay award. First, it held that Captain Hopkins adequately mitigated his damages by engaging in ultimately unprofitable self-employment in 2005-06 and by obtaining pilot employment at Spirit Airlines ("Spirit") in late 2006. *See* JA VII at 1077-81, 1170-73. Second, and as described in detail below, it squarely rejected TSA's claim (which TSA attempts to relitigate here) that there should be no backpay award due to ALPA's payments to Hopkins during the backpay period.

9

## 1.    ALPA's Section 60 Payments to Captain Hopkins

Section 60.M.5 of ALPA's Administrative Manual provides for payments to union officials who ALPA believes have been suspended or discharged due to their union activities:

> FLIGHT PAY LOSS IN UNION ACTIVITY DISCHARGE/ SUSPENSION CASES. . . .
>
> a.    At the determination of the Executive Council, any elected representative or any appointee of the National Officers or the MEC suspended or discharged because of authorized union activities shall be continued on full flight pay loss.
>
> b.    In handling requests for flight pay loss in these cases, assessment of all facts available in such cases shall be undertaken, including the views of the MEC involved.  When approved, such flight loss payment shall be retroactive to the date of suspension or discharge of the involved member, and flight pay loss payments in any such instance to a suspended or discharged member shall cease upon disposition of his case under the member's contractual grievance machinery.  ALPA must be consulted if settlement is offered and unless the President or his designee is a party to the settlement offer and concurs with the pilot's decision, the Executive Council may terminate continuing flight pay loss support.
>
> c.    Any monies paid such suspended or discharged member by his carrier as a result of a grievance decision, or earlier in the grievance process, shall be repaid by the member to ALPA up to but not exceeding that amount received from ALPA in the form of flight pay loss.  The amounts and sources of other income may be considered by the Executive Council.  The Executive Council shall review each case when and if additional information becomes available.  [JA IV at 577-78.]

At its meeting from April 26-28, 2005, ALPA's Executive Council found that Captains Hopkins and Jason Kagan (a third discharged TSA pilot) "were

10

terminated because of their union activity" and approved payment to them of flight-pay loss in the amounts of 85 hours per month (plus retroactive payments and COBRA premiums) pursuant to Section 60.M.5. *Id.* at 580-82.

Captain Hopkins received these Section 60 payments from March 2005 until November 2007 (a total of $161,798.87), although the monthly payments were reduced by his interim earnings at Spirit in 2007. Hopkins was an officer of ALPA for approximately the first 22 months of this 30-month period but ceased being an officer in early 2007. JA VIII at 1242 (¶ 17.b), 1249 (¶ 22), 1303-05, *passim*. He will remit a portion of the backpay award to ALPA up to the amount of the Section 60 payments. Hopkins had no obligation to reimburse ALPA for the Section 60 payments if there was no backpay recovery. JA II at 210 (Tr. 86.24-87.2); JA III at 298 (Tr. 29.5-.18); JA VII at 1175.

## 2. The System Board's Rejection of TSA's LMRDA Claim

TSA argued to the System Board that a backpay award would violate public policy as set forth in Section 503(a) of the LMRDA because the Section 60 payments to Captain Hopkins: (a) were a "loan" to a union officer in excess of $2,000; and (b) would become such an illegal loan if "the transaction between ALPA and [Hopkins] . . . [is] ever consummated." JA VII at 1081-85. The Board rejected these arguments, ruling that the Section 60 pay was not a "loan" and did not violate the LMRDA:

Appellate Case: 10-1700    Page: 23    Date Filed: 07/13/2010 Entry ID: 3682963

In the first instance, the very arguments presented by the Company to attempt to portray the Section 60 transaction as a loan better serve to show that it was not.  Trans States, for instance, quotes Black's Law Dictionary's definition of a loan as:

> Delivery by one party to and receipt by another party of a sum of money, upon agreement, express or implied, to repay it with or without interest.  [citation omitted]

Trans States' contention that <u>Black's</u> definition covers the Section 60 transfer of ALPA monies to the Grievant fails because it ignores an essential part of the quoted definition, i.e. "...upon agreement, express or implied, to repay it."  The plain fact characterizing the obligation of the Grievant [Hopkins] to ALPA which distinguishes the Section 60 transaction [from a "loan"] is that the Grievant need not repay any part of the monies he received from ALPA unless and until he receives a make-whole remedy payment from Trans States.

Stated differently, if the Grievant were to have lost his case before this System Board of Adjustment, or, alternatively, if he prevailed before the board but subsequently lost on appeal to a court, he would have owed ALPA nary a cent.  "All or nothing" may characterize the terms of a poker bet but certainly would never describe those of a true loan.

The signal flaw in the Company's LMRDA argument, however, centers on its assertion that award of backpay covering the period of the Section 60 transfer of monies to the Grievant would violate public policy as set forth in that statute.  Trans States correctly cites Congressional intent in enacting LMRDA as providing "protection to workers from corrupt leadership prevalent in many private sector unions."  By this reference to legislative intent the Company seeks to propose that ALPA's leadership entered upon a corrupt arrangement with the Grievant in the Section 60 transaction, to the detriment of its members who thus need LMRDA protection against such abuse of fiduciary trust.

This proposition flies in the face of facts and reason.  The sole purpose of Section 60 is to protect the elected leaders of ALPA

12

members from discriminatory disciplinary treatment attributable to anti-union animus. Without such indemnification of risk to their careers many pilots who might otherwise have accepted the will of their members to serve their economic interests would hesitate to take on the responsibilities of union leadership. The facts strongly suggest that this kind of protection of union leadership is well warranted on this property. Indeed, Chairman Lalka in <u>Kagan</u> found Trans States' termination of a pilot union leader was tainted by animus.[1] The present Chairman chose to uphold the Hopkins grievance on a palpable failure to show just cause without any searching review of the animus question.

On the basis of the foregoing discussion and opinion, Trans States LMRDA challenge should be and is hereby dismissed. [*Id*. at 1173-74.]

## V.  THE *KAGAN* SYSTEM BOARD'S REJECTION OF TSA'S LMRDA CLAIM

In October 2007, the System Board in the *Kagan* case (Colman Lalka, neutral chairman) reached a similar conclusion as the subsequent *Hopkins* Board concerning the legality of ALPA's Section 60 payments. JA V at 652-55. ALPA's Executive Council had approved the Section 60 payments to Captain Kagan at the same time (and in the same resolution) as those payments had been approved for Captain Hopkins. JA VIII at 1300 (¶ 6); JA IV at 580-82.

The System Board ordered reinstatement of Kagan, finding, *inter alia*, that his discharge was due to his union activities, and the Board subsequently ordered TSA to pay $114,318.03 in backpay and benefits to Kagan plus interest at a rate of nine percent annually. JA VIII at 1301 (¶ 11); JA V at 653. In making this award,

[1] JA I at 21 (¶ 17); JA II at 164.

Appellate Case: 10-1700     Page: 25     Date Filed: 07/13/2010 Entry ID: 3682963

the *Kagan* Board rejected TSA's arguments (JA V at 680-86) that ALPA's

Section 60 payments to Kagan were an illegal loan that violated the LMRDA and

that a backpay award would violate the LMRDA:

> In the event the Grievant was not reinstated and no backpay awarded
> as the result of the grievance over his termination, nothing would have
> been owed by the Grievant to ALPA. If the payments to the Grievant
> were a loan, payment would be required regardless of the outcome of
> the termination grievance. This situation is analogous to a policy of
> insurance wherein an insured is required to subrogate to the insurer
> his or her rights of collection from a tortfeasor up to the amount paid
> by the insurer. [*Id*. at 652.]

The *Kagan* System Board applied the same collective bargaining agreement

as the subsequent *Hopkins* Board. JA III at 1302 (¶ 13). At the *Kagan* Board

hearings concerning backpay, both ALPA and TSA were present, represented by

counsel, and afforded the opportunity to present evidence, testimony, and

argument. The transcript from that hearing ran more than 200 pages. Both parties

also submitted post-hearing briefs. JA V at 657-87; JA VIII at 1300-01 (¶ 8).

Following the entry of the *Kagan* backpay award, the parties reached a

settlement agreement. TSA did not challenge the *Kagan* backpay award in court.

JA VIII at 1301 (¶ 12).

## VI. THE DISTRICT COURT'S ENFORCEMENT OF THE *HOPKINS* BACKPAY AWARD

TSA refused to comply with the *Hopkins* backpay award. Instead, pursuant

to the District Court's retained jurisdiction, TSA challenged the System Board's

14

conclusions concerning Captain Hopkins' mitigation efforts and the legality of ALPA's Section 60 payments to him. The District Court, Magistrate Judge Thomas Mummert, III, rejected both challenges and ordered enforcement of the Board's award, concluding that the award "complies with the RLA, confines itself to matters within its jurisdiction, is not fraudulent or corrupt, is not irrational, and does not manifest a disregard for the law." *See* TSA Addendum at 16-17.[2]

As an initial matter, the District Court noted the exceptionally narrow scope of review of System Board awards. *Id.* at 9. The Court then rejected TSA's argument that Captain Hopkins had not mitigated his damages. *Id.* at 10-15. TSA has not appealed that ruling.

The District Court also rejected TSA's argument that the backpay award violated public policy as set forth in the anti-loan provisions of the LMRDA, 29 U.S.C. § 503(a). The Court found that "a loan requires either repayment or default. The Court, and apparently TSA, was unable to find any definition of the term 'loan' that included a contingency for repayment." TSA Addendum at 15-16 (citing and quoting with emphasis added, *inter alia*, *United States v. Basin Elec. Power Co-op.*, 248 F.3d 781, 804 (8th Cir. 2001) ("'(W)here one party advances money to another, who in turn *agrees to repay a loan* with interest, there is a loan.'"). *Id.* at 15-16. The Court continued:

---

[2] The parties had agreed to submit the case to the Magistrate Judge for resolution. JA I at 5 (Docket No. 10).

Appellate Case: 10-1700    Page: 27    Date Filed: 07/13/2010 Entry ID: 3682963

The arbitrator found that there was no agreement, express or implied, that Hopkins repay ALPA the Section 60 monies paid him regardless of his circumstances. Instead, repayment is expressly contingent on Hopkins prevailing in his grievance challenge to his discharge. If Hopkins lost his grievance, he would not have to repay ALPA any money. Further, the arbitrator found that Section 60's purpose is to indemnify ALPA members at risk to their career, thereby financially protecting a member who elects to pursue a grievance or accept the responsibility of union leadership. The arbitrator's reasoning is within the broad discretion afforded him by the RLA. [*Id.* at 16.]

## SUMMARY OF ARGUMENT

This case is the latest of a series of uniformly unsuccessful challenges to the awards of a Railway Labor Act System Board. TSA concedes the exceedingly narrow scope of review of those awards and does not assert that this case meets any of the three statutory bases to challenge the *Hopkins* backpay award. *See infra* at 17-18. Instead, it alleges that the award violates public policy as set forth in the LMRDA. However, TSA submitted that issue to the Board for decision, and the Board rejected it, so the award may be reviewed only for "manifest disregard of the law" -- a standard that TSA does not claim to meet. Moreover, the Board's award did not violate public policy in any event. The Section 60 payments were not a "loan," and (even if they somehow were a loan) enforcing the award would not violate a "well-defined and dominant" public policy. *See infra* at 18-31.

TSA loses for other reasons as well. This Court's decisions on issue preclusion bar TSA from raising its LMRDA claim again after it was rejected by

Appellate Case: 10-1700    Page: 28    Date Filed: 07/13/2010 Entry ID: 3682963

the *Kagan* System Board in a fully litigated arbitration. *See infra* at 32-35.

Moreover, TSA lacks standing to raise a "public policy" claim under the LMRDA because: (1) it was not harmed by ALPA's Section 60 payments to Captain Hopkins; and (2) it is not within the scope of protection afforded by Section 503(a) of the LMRDA. Finally, TSA waived its right to make any arguments in favor of its "prudential standing" by failing to make them to the District Court. *See infra* at 35-40.

## ARGUMENT

## THE DISTRICT COURT CORRECTLY ENFORCED THE SYSTEM BOARD AWARD.

### A. The Standard of Review of Railway Labor Act Arbitration Awards.

#### 1. TSA Does Not Dispute that Its Challenge to the Award Falls Outside of the Three Statutory Bases for Overturning a Railway Labor Act Arbitration Award.

The District Court correctly determined, and TSA does not dispute, that judicial "review of an arbitration award is very limited, and review of the decision of a public arbitration board under the [RLA] . . . 'is among the narrowest known to the law.'" TSA Addendum at 9 (quoting *Finley Lines Jt. Prot. Bd. Unit 200 v. Norfolk S. Ry.*, 312 F.3d 943, 946 (8th Cir. 2002), quoting *BMWE v. Terminal R.R. Ass'n*, 307 F.3d 737, 739 (8th Cir. 2002)). Under this narrow standard of review, courts may not review an arbitrator's decision on the merits "'despite allegations

17

that the decision rests on factual errors or misinterprets the parties' agreement(.)'"
*Finley*, 312 F.3d at 946 (quoting *Major League Baseball Players Ass'n v. Garvey*,
532 U.S. 504, 509 (2001)). *Accord Duluth, Missabe & Iron Range Ry. v. IBLE*,
264 F.3d 782, 784-85 (8th Cir. 2001) ("'The fact that a "court is convinced (the
arbitrator) committed serious error does not suffice to overturn (the arbitrator's)
decision."'") (quoting *Garvey*, 532 U.S. at 509). Instead, as the District Court
ruled and as TSA concedes, "(a)n arbitration award may be set aside on three
grounds only: (1) the Board's failure to comply with the provisions of the (RLA);
(2) failure of the order to confine itself to matters within the scope of its
jurisdiction; or (3) fraud or corruption." TSA Addendum at 9 (quoting *BMWE v.
Soo Line R.R.*, 266 F.3d 907, 909 (8th Cir. 2001) (alteration added) (citation
omitted)) and 45 U.S.C. § 153 First (q)); TSA's Brief at 12.

TSA does not challenge the *Hopkins* backpay award on any of the above
bases. Rather, it claims that the award should be vacated because it violates public
policy as set forth in the LMRDA. TSA's Brief at 14-21. We turn next to the
standard of review of the System Board's decision on that issue.

> **2.    A Challenge to the System Board's Determination that Its
> Award Does Not Violate Public Policy Is Subject Only to a
> "Manifest Disregard of the Law" Standard of Review.**

In very limited circumstances, adjustment board awards can be vacated if
they violate "well-defined and dominant public policies." *Union Pac. R.R. v.*

Appellate Case: 10-1700    Page: 30    Date Filed: 07/13/2010 Entry ID: 3682963

*UTU*, 3 F.3d 255, 258 (8th Cir. 1993). The "public policy exception is narrow[.]" *Eastern Associated Coal Corp. v. UMW*, 531 U.S. 57, 63 (2000); *Williams v. National Football League*, 582 F.3d 863, 884-85 (8th Cir. 2009). The public policies must be "ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Union Pac.*, 3 F.3d at 260-61 (quoting *W.R. Grace and Co. v. Local Union 759, Rubber Workers*, 461 U.S. 757, 766 (1983) (internal quotations omitted)). The "violation of such a policy must be clearly shown if an award is not to be enforced." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987).

TSA implicitly but incorrectly assumes that this Court should conduct a *de novo* review of the System Board's determination that ALPA's Section 60 payments to Captain Hopkins did not violate public policy as set forth in Section 503(a) of the LMRDA. It is true that ordinarily (and as in the cases cited above and by TSA), courts conduct the public policy review of an arbitration award pursuant to the standards set forth above. However, where (as here) parties submit to arbitration matters that otherwise would be for judicial decision, the court's review of the arbitration decision is limited to whether the decision was made in "manifest disregard" for the law. *Kiernan v. Piper Jaffray Cos.*, 137 F.3d 588, 594 (8th Cir. 1998); *cf. Misco,* 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his

authority, that a court is convinced he committed serious error does not suffice to overturn his decision."); *Boise Cascade Corp. v. PACE, Local 7-0159*, 309 F.3d 1075, 1080 (8th Cir. 2002) (applying "manifest disregard" of law standard in review of labor arbitration award). Thus, in *Kiernan*, the claimant submitted an Americans with Disability Act ("ADA") claim to arbitration but later challenged both the arbitrability and denial of that claim. In upholding the arbitration award, this Court held: (1) the claimant waived its arbitrability challenge by proceeding with the arbitration; and (2) the arbitrator's ADA decision was subject to the "manifest disregard for the law" standard of review. 137 F.3d at 594-95. *Accord Stark v. Sandberg, Phoenix & Von Gontard, P.C.*, 381 F.3d 793, 802 (8th Cir. 2004) ("manifest disregard" standard applied to review of arbitration award under Fair Debt Collection Practices Act); *Homestake Mining Co. v. United Steelworkers, Local 7044*, 153 F.3d 678, 681 (8th Cir. 1998) (public policy challenge to arbitrator's determination that employee's conduct did not violate federal mine safety regulations was subject only to "'manifest disregard for law'" standard of review); *Franklin Elec. Co. v. UAW*, 886 F.2d 188, 192 (8th Cir. 1989)

20

(employer bound by arbitrator's decision on arbitrability when issue was voluntarily submitted to arbitration).[3]

The "manifest disregard" of the law doctrine is one of "'last resort' reserved for 'those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent[.]'" *St. John's Mercy Med. Ctr. v. Delfino*, 414 F.3d 882, 884 n. 1 (8th Cir. 2005) (citation omitted). Such a "manifest disregard" occurs "where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it." *Gas Aggreg. Servs., Inc. v. Howard Avista Energy*, *LCC,* 319 F.3d 1060, 1069 (8th Cir. 2003). "The disregard must appear clearly in the record of the arbitration, and 'there must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally

---

[3] Cases cited by TSA are not to the contrary. Unlike TSA's claim here, most of the cited cases involved employee conduct that was illegal based on facts found by the arbitrator and, further, did not involve a situation where the public policy issue was submitted to the arbitrator for determination. *See Exxon Shipping Co. v. Exxon Seamen's Union*, 11 F.3d 1189 (3d Cir. 1993) (arbitration board found seaman to be intoxicated while on duty); *Delta Air Lines, Inc. v. ALPA*, 861 F.2d 665, 668 (D.C. Cir. 1988) (adjustment board found that pilot had flown drunk); *Iowa Elec. & Power Co. v. Local Union 204, IBEW*, 834 F.2d 1424, 1426 (8th Cir. 1987) (arbitrator found that employee deliberately bypassed federally required safety system in containment area at nuclear facility); *American Postal Workers Union v. USPS*, 682 F.2d 1280, 1283, 1284 (9th Cir. 1982) (employee engaged in illegal strike and statute prohibited employment of those who had engaged in such strikes). In the remaining case, a separate criminal conviction of the employee-grievant for theft from the public employer prompted the district court to vacate the arbitrator's reinstatement award on public policy grounds, but the appellate court affirmed because the arbitrator's award was arbitrary and capricious. *See USPS v. NALC*, 847 F.2d 775, 777-79 (11th Cir. 1988).

21

disregarded it.'" *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005) (quoting *Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 674-75 (8th Cir. 2004)).[4]

Thus, in order to prevail here, TSA must clearly show that: (1) the *Hopkins* backpay award violated a well-defined, dominant, governing public policy expressed in statutes and legal precedents as opposed to generalized notions of the public interest; and (2) the record before the System Board demonstrates that the Board was aware of, and ignored, that policy. As shown below, TSA does not come close to satisfying this Herculean burden.

### B. The Board's Award Was Not in Manifest Disregard of the Law and Did Not Violate Public Policy.

Ignoring the deference afforded to System Board awards, TSA argues that ALPA's Section 60 payments to Captain Hopkins were an illegal loan in violation of Section 503(a) of the LMRDA. TSA's Brief at 16-18. TSA then leaps from that flawed premise to the conclusion that *enforcement* of the Board's award would

---

[4] However, at least under the Federal Arbitration Act ("FAA"), even that limited review may no longer be available because it is not explicitly set forth in that statute. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008); *Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir. 2008); *see also Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S. Ct. 1758, 1768 n.3 (2010) (declining to decide whether "manifest disregard" standard of review under FAA survives *Hall Street*). *But see Williams*, 582 F.3d at 883. The Court need not decide that issue here because TSA does not come close to meeting the "manifest disregard" standard.

22

violate public policy because of ALPA's alleged violation of the LMRDA.  Neither claim has any merit.

1. **The System Board's Holding that the Section 60 Payments Were Not a "Loan" Neither Manifestly Disregarded Governing Law Nor Violated a Well-Defined and Dominant Public Policy.**

Section 503(a) of the LMRDA provides:

> No labor organization shall make directly or indirectly any loan or loans to any officer or employee of such organization which results in a total indebtedness on the part of such officer or employee to the labor organization in excess of $2,000.  [29 U.S.C. § 503(a).]

In deciding that ALPA's Section 60 payments to Captain Hopkins were not a "loan," the System Board did not manifestly disregard the LMRDA.  The Board (correctly) reasoned that no "loan" transpired because, at the time the payments were made, Hopkins had no absolute obligation to repay ALPA.  JA VII at 1173.  To reach this conclusion, the Board relied on TSA's own cited definition of "loan" from Black's Law Dictionary (6th ed. 1991).  *Supra* at 11-12 ("loan" is "[d]elivery by one party to and receipt by another party of a sum of money, upon agreement, express or implied, to repay it with or without interest").  TSA did not cite any other definition, let alone "governing law" that the Board ignored.  *See* JA VII at 1083 and 1073-94, *passim*.  That is not even close to "manifest disregard of the law."  *Compare St. John's Mercy Med. Ctr.*, 414 F.3d at 884 (no manifest

Appellate Case: 10-1700     Page: 35     Date Filed: 07/13/2010 Entry ID: 3682963

disregard of law concerning damages for breach of contract where arbitrator did not cite relevant case law).

This case is quite similar to this Court's decision in *Homestake Mining*, 153 F.3d 678. There, an arbitrator determined that an employee's conduct did not violate federal mine safety ventilation regulations that prohibited welding *to* certain containers because the employee had welded *upon* such a container. This Court found that the arbitrator's interpretation of the federal safety regulations was not in manifest disregard of the law and accordingly was "'insulated from review.'" *Id.* at 680-81 (citation omitted). Likewise, here the Board determined that the Section 60 payments were not a "loan," and TSA cited no governing definition to the contrary. Accordingly, the award must be enforced.

The Board's decision easily survives a "public policy" challenge even absent the "manifest disregard" standard of review. TSA cites no "well-defined and dominant public policies" as expressed in "laws and legal precedents" concerning the definition of a "loan," and there are none. The LMRDA does not define the term. The only judicial definition of "loan" under the statute is a district court decision from another jurisdiction (*United States v. IBT*, 817 F. Supp. 337, 344 (S.D.N.Y. 1993)) that used the same Black's Law Dictionary definition as the System Board -- clearly not the kind of contrary, well-defined, and dominant "laws and legal precedents" to which the public policy doctrine refers. *See Eastern*

24

*Associated Coal*, 531 U.S. at 66 (arbitration award ordering reinstatement of
marijuana user to safety-sensitive position regulated by Congress and the
Department of Transportation "violates no specific provision of any law or
regulation" and accordingly may not be vacated for violating public policy);
*MidAmerican Energy Co. v. IBEW Local 499*, 345 F.3d 616, 621 (8th Cir. 2003)
(no well-defined and dominant law concerning storage of liquified natural gas such
that a single violation of safety protocols warrants denial of grievant's
reinstatement to work in any capacity).

TSA responds that "loans frequently contain all kinds of contingencies" and
cites three decisions. TSA's Brief at 15 (citing *Wisdom v. First Midwest Bank*,
167 F.3d 402, 405 (8th Cir. 1999); *Gilbratar Sav. v. Commonwealth Land Title Ins.
Co.*, 907 F.2d 844, 845 n.2 (8th Cir. 1990); *Regional Inv. Co. v. Haycock*, 723 F.2d
38, 40 (8th Cir. 1983)). But these cases are beside the point. First, TSA did not
cite them to the System Board, which obviously then did not "manifestly
disregard" them. JA VII at 1073-95, *passim*. *See Biscanin*, 407 F.3d at 907 (law
allegedly intentionally disregarded by arbitrator must appear in arbitration record);
*Stark*, 381 F.3d at 802-03 (no manifest disregard of law where party did not cite
contrary case law to arbitrator).

Second, the decisions are utterly irrelevant and thus are not the "laws and
legal precedents" required for a public policy challenge. The cited cases

Appellate Case: 10-1700    Page: 37    Date Filed: 07/13/2010 Entry ID: 3682963

offhandedly refer to the transactions in question as "loans" while neither undertaking any legal analysis of the term nor applying the LMRDA. *Compare PaineWebber, Inc. v. Agron*, 49 F.3d 347, 351 (8th Cir. 1995) (general policy in securities industry requiring employee honesty was not "well-defined and dominant policy ascertainable from 'laws and legal precedents'" to permit overturning arbitration award on public policy grounds) (citation omitted)). Moreover, none of the cases involve the situation here -- where the recipient's obligation to "repay" the provider of the alleged "loan" depended on the occurrence of another, uncertain event outside of his control. Rather, the contingencies in the cited cases had to occur as a precondition to the loan being extended; once the payment was made, the recipients had an absolute obligation to repay it. Accordingly, the District Court quite correctly concluded that the absence of a required "repayment or default" in the Section 60 payments distinguished them from a "loan." TSA Addendum at 15-16 (citing and quoting with emphasis added, *inter alia*, *Basin Elec. Power Co-op.*, 248 F.3d at 804 ("'(W)here one party advances money to another, who in turn *agrees to repay a loan* with interest, there is a loan.'")).

In reality, and as the *Kagan* System Board found, the Section 60 payments are analogous to payments by an insurance company that then becomes subrogated to its insured's cause of action against a third party. JA V at 652. The payments

26

made by the insurer in such circumstances are not a "loan;" rather, they simply comply with the terms of an insurance policy. The same is true of payments made pursuant to ALPA's Section 60 policy.[5]

## 2. Even Apart from TSA's "Loan" Claim, Enforcing the System Board Award Does Not Violate Public Policy.

TSA's remaining "public policy" assertions rest on the flawed premise that the Section 60 payments were a loan. These claims fail for other reasons as well.

As a preliminary matter, TSA ignores that public policy does not require vacating favorable arbitration awards to those who engage in illegal or dangerous behavior. "[N]o public safety concerns are implicated by [an] arbitrator's award of backpay, as opposed to an order returning a potentially dangerous employee to the workplace." *Daniel Constr. Co. v. Local 257, IBEW*, 856 F.2d 1174, 1182 (8th Cir. 1988). Thus, this Court has held that the following awards did not violate public policy: (1) backpay to a worker discharged for on-the-job drug use, *IBT Local 878 v. Commercial Warehouse Co.*, 84 F.3d 299, 302 (8th Cir. 1996); (2) backpay to employees failing a psychological stability test at a nuclear facility, *Daniel Construction*, 856 F.2d at 1182; and (3) reinstatement, to a non-safety-sensitive position, of an employee who left his post monitoring the stability of

---

[5] Further illustrating that the Section 60 payments were not a "loan" is that the Board's award -- made at 81 hours of TSA wages per month -- is less than the amount of the Section 60 payments of 85 hours of TSA wages per month. JA VII at 1178. Captain Hopkins has no obligation to pay to ALPA amounts not paid by TSA in a backpay award. No "loan" works in such a fashion.

Appellate Case: 10-1700    Page: 39    Date Filed: 07/13/2010 Entry ID: 3682963

millions of gallons of liquid natural gas and who disabled safety systems to hide

his absence, *MidAmerican Energy*, 345 F.3d at 618, 621-22.  A case cited by TSA

(at 17) similarly holds that an arbitration award ordering an airline to pay for the

alcohol rehabilitation of a pilot who flew while drunk (as compared to

reinstatement of that pilot) did not violate public policy.  *Delta Air Lines*, 861 F.2d

at 674-75.  Rather, the question is whether *enforcement* of the award clearly

violates well-defined and dominant public policies as expressed in statutes and

legal precedents such that it endangers the public well-being.  *See MidAmerican

Energy*, 345 F.3d at 620; *Daniel Construction*, 856 F.2d at 1182.

TSA first claims (at 20-21) that the Board's award does so because this

"case is quintessentially about enforcement of an illegal and corrupt loan

agreement[,]" in that "Hopkins will not benefit one penny if this Court affirms the

Judgment of the District Court enforcing Arbitrator Flagler's back pay award."

Ignoring the hyperbole (the case is "quintessentially" about a backpay award for

TSA's improper discharge of an employee), enforcement of the Board award does

not compel violation of the LMRDA.  This litigation is not by ALPA against

Hopkins to enforce Section 60, and enforcing the System Board award accordingly

does not require Hopkins to repay the Section 60 monies to ALPA.  Rather, the

award requires *TSA* to pay ALPA *or* Hopkins.  *See* JA VIII at 1204.  Only if:  (a)

TSA decides to incur payroll taxes and pay the backpay award to Hopkins and not

ALPA; and (b) he refuses to transmit that payment to ALPA, will the possibility of judicial enforcement of Section 60 arise -- a potential suit by ALPA against Hopkins to require him to turn over the backpay award. That is not the case at bar, and the speculative possibility of such an avoidable suit in the future does not justify non-enforcement of the Board's award on public policy grounds. *Compare W.R. Grace*, 461 U.S. at 758 (arbitration award of backpay to laid-off male worker did not violate public policy even though laying off more junior female employee would have violated subsequently-overturned district court injunction; employer "was cornered by its own actions, and it cannot argue now that liability under the [CBA] violates public policy").

The System Board explicitly addressed, and correctly rejected, TSA's "corrupt and illegal loan arrangement" argument as "fl[ying] in the face of facts and reason." The Board found that the "sole purpose of Section 60 is to protect the elected leaders of ALPA members from discriminatory disciplinary treatment attributable to anti-union animus" and that the lack of such indemnification would discourage pilots from participating in union leadership. The Board further found that the "facts strongly suggest that this kind of protection of union leadership is

well warranted on this property" and cited the Board's finding in the *Kagan* case that TSA discharged Grievance Chairman Kagan due to anti-union animus.[6]

TSA next asserts (at 14) that enforcement of the Board's award "will cause the ALPA/Hopkins financial arrangement to ripen into one that is plainly unlawful under the LMRDA." This claim also fails. First, the Board rejected it, deciding that whether a "loan" exists is determined at the time of the transaction and not when an uncertain contingency occurs. JA VII at 1085, 1173-74. That conclusion was not in "manifest disregard of the law" or contrary to well-defined, dominant, governing public policy expressed in statutes and legal precedents; indeed, TSA has cited no contrary authority.

Second, Section 503(a) only bars certain loans to union "officers." If the Section 60 transaction becomes a "loan" only upon payment by TSA to Captain Hopkins, no violation can occur because no payment has been made, and Hopkins ceased being a union officer in early 2007.

---

[6] In sustaining the *Kagan* grievance, the System Board concluded: "[T]he Arbitrator is convinced of TSA's desire to terminate, harass, and intimidate ALPA officials, thus weakening and undermining the Pilot's Union. Based on the above, the Arbitrator concludes [Kagan] was terminated as a result of antiunion bias." JA I at 21 (¶ 17); JA II at 164. Notably, the evidence before the *Kagan* Board included the open display of replica photographic identification cards of four ALPA leaders in the office of Company Vice President and General Counsel David Hayes with *Ghostbusters*-style circles and slashes around and through the identification cards of the two union leaders who had been discharged -- Captains Kagan and Hopkins. JA II at 161-63. The RLA provides for criminal sanctions for such conduct that "interfere[s] with, influence[s] or coerce[s]" unions or employers in their choice of representatives. 45 U.S.C. § 152 Third, Tenth.

30

Finally, if ALPA made an unlawful loan (and it did not), TSA has cited no authority that repayment of that loan is unlawful. Rather, repayment serves the purposes of the LMRDA. As TSA recognizes (at 20), the LMRDA "guard[s] union funds from predators, and keep[s] intact all such funds except those expended in legitimate operation of the union's business." TSA's payment of the backpay award to ALPA [or to Captain Hopkins, assuming that he then transmits the funds to ALPA] fulfills those goals by protecting ALPA's members from what TSA asserts were illegal Section 60 payments, just as Section 60 benefits members by insulating their leaders from managerial intimidation. In contrast, TSA's cynical attempt to gain a windfall by avoiding its backpay obligation arising from its wrongful discharge of Hopkins would harm ALPA's members by depriving their union of use of those funds and by threatening ALPA's ability to protect its leadership from further managerial intimidation tactics.

### C.    TSA Is Barred from Raising Its LMRDA Claim.

This Court may affirm the judgment below "'on any basis supported by the record,'" even if the District Court did not decide the issue in question. *Friends of Lake View School Dist. Incorp. No. 25 v. Beebe*, 578 F.3d 753, 758 (8th Cir. 2009) (citation omitted). Here, and as explained below, two additional bases require affirmance: (1) the doctrine of issue preclusion bars TSA from raising the LMRDA issue; and (2) TSA lacks standing to raise the LMRDA issue.

31

### 1. The Doctrine of Issue Preclusion Bars the Claim.

Issue preclusion occurs if the following four prerequisites are met:

> (1) the issue sought to be precluded is identical to one previously decided; (2) the prior action resulted in a final adjudication on the merits; (3) the party sought to be estopped was either a party or in privity with a party to the prior action; and (4) the party sought to be estopped was given a full and fair opportunity to be heard on the issue in the prior action. [*Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1168 (8th Cir. 1989).]

Issue preclusion applies in cases where an arbitrator (not a court) issued the first decision. *Id.*; *American Fed. of TV & Radio Artists Health and Ret. Funds v. WCCO TV, Inc.*, 934 F.2d 987, 991 (8th Cir. 1991); *see also Summerville v. Trans World Airlines, Inc.*, 219 F.3d 855, 857-58 (8th Cir. 2000) (system board decision precluded grievant from relitigating factual findings in subsequent suit for disability discrimination).

The System Board decision in *Kagan* satisfies these elements and precludes TSA from raising its LMRDA claim here. First, TSA was a party to *Kagan*. Second, TSA had a full and fair opportunity to litigate the issue in *Kagan*. TSA called and cross-examined witnesses, introduced exhibits, and filed a 28-page brief that explicitly addressed the LMRDA issue. *Supra* at 13-14; JA V at 657-87.

Third, *Kagan* was a final adjudication of the merits of the LMRDA claim. It is true that the parties subsequently settled *Kagan*, but that "does not vitiate the finality of the award. . . . Collateral estoppel applies when the issues have been

Appellate Case: 10-1700     Page: 44     Date Filed: 07/13/2010 Entry ID: 3682963

fully adjudicated regardless of a subsequent settlement agreement." *Wellons*, 869 F.2d at 1169.  This is because the "'losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal[.]'"  *Royal Ins. Co. v. Kirksville Coll. of Osteopathic Med., Inc.*, 304 F.3d 804, 808 (8th Cir. 2002) (citation omitted).

Finally, both cases raised the same issue:  whether ALPA's Section 60 payments to a grievant/union officer violated Section 503(a).  *Supra* at 13-14.  In that regard, TSA's response below -- that *Kagan* is not binding because it addressed whether the Section 60 payments violated the LMRDA while *Hopkins* asked whether the Section 60 payments violate public policy "because the arrangement violates the LMRDA" (JA VIII at 1316-17) -- defines the proverbial "distinction without a difference."  TSA's claims in both *Kagan* and here turned on the issue of whether the Section 60 payments were a loan under Section 503(a) of the LMRDA.  As *Kagan* held that the Section 60 payments were not a loan and therefore did not violate the LMRDA, they likewise did not violate public policy as embodied in the anti-loan provisions of the LMRDA.  Issue preclusion is required in such circumstances.  *See Summerville*, 219 F.3d at 857-58 (system board decision precluded grievant from relitigating factual findings in subsequent suit for disability discrimination); *WCCO TV,* 934 F.2d at 991 (in action by pension plan trustees against employer, employer was precluded from relitigating finding in

33

earlier, separate arbitration that it was obligated to contribute to pension plans); *Wellons*, 869 F.2d at 1171 (arbitration award in favor of manufacturer and against builder holding that manufacturer and its agent did not act negligently or fraudulently barred builder's subsequent suit against the agent for negligence and fraud).

TSA also argued below that issue preclusion does not apply because this case is, in essence, an appeal of an arbitration ruling. JA VIII at 1314-15. However, the present case is not an appeal of the earlier, separate *Kagan* award that provides the basis for issue preclusion; that award became binding for preclusion purposes when TSA failed to appeal it. Moreover, both trial and appellate courts must give preclusive effect to arbitration rulings in earlier, separate arbitration proceedings when the four-part test is met. *See WCCO TV*, 934 F.2d at 991 (reversing trial court and holding that earlier arbitration award in separate case precluded defendant from relitigating issue).[7]

---

[7] TSA also argued below that issue preclusion does not apply because the *Hopkins* Board rejected ALPA's argument that the *Kagan* decision precluded many of TSA's claims. JA VIII at 1315. The *Hopkins* Board, however, confronted a different issue -- whether the *Kagan* award was binding in a subsequent *arbitration*. "[A]n arbitrator generally has the power to determine whether a prior award is to be given preclusive effect[.]" *Trailways Lines, Inc. v. Trailways, Inc. Joint Council*, 807 F.2d 1416, 1425-26 (8th Cir. 1986). In contrast, the prior arbitration award is binding and preclusive in subsequent *judicial* proceedings when, as here, the four-part test is met.

Appellate Case: 10-1700     Page: 46     Date Filed: 07/13/2010 Entry ID: 3682963

In sum, TSA is engaging in *seriatim* litigation challenging successive final and binding System Board awards that reject its LMRDA claim in the desperate hope that some tribunal somewhere will accept its argument. That is precisely what issue preclusion is designed to prevent: waste of judicial resources and encouragement of inconsistent decisions. *See Irving v. Dormire*, 586 F.3d 645, 648 (8th Cir. 2009). *Kagan* rejected TSA's LMRDA claim. TSA may not relitigate the issue here.

### 2. TSA Lacks Standing to Raise the Its LMRDA Claim.

For TSA to have Article III standing to bring its LMRDA claim, it must show:

> [1] an "injury in fact," an actual or imminent concrete and particularized invasion to a legally protected interest; [2] the injury must be fairly traceable to the challenged action of the defendant; and [3] the injury must be redressable by a favorable decision. [*Jewell v. United States*, 548 F.3d 1168, 1172 (8th Cir. 2008); *accord Schultz v. Windstream Commc'ns, Inc.*, 600 F.3d 948, 952 (8th Cir. 2010).]

In addition, TSA must show "prudential" standing by demonstrating that its claim falls within the zone of interests protected by Section 503(a) of the LMRDA. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997). These prudential standing requirements "are statutorily imposed jurisdictional limitations separate from and in addition to constitutional standing requirements." *Davis v. U.S. Bancorp*, 383 F.3d 761, 767 (8th Cir. 2004).

Appellate Case: 10-1700    Page: 47    Date Filed: 07/13/2010 Entry ID: 3682963

As explained below, TSA lacks both types of standing, and it also has waived its right to claim prudential standing.

a.  TSA has not suffered an actual or threatened injury fairly traceable to the Section 60 payments to Captain Hopkins.

"Injury in fact" requires the party bringing suit to have "a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *United States v. Hays*, 515 U.S. 737, 743 (1995). "[G]eneral allegations of *possible* or *potential* injury do not" establish standing. *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009).

TSA argued below that the Section 60 payments injured it because "ALPA's Section 60 arrangement with Hopkins undermined, we would contend destroyed, his incentive to find remunerative work that would have been an offset against backpay."  JA VII at 1316.  *See also* TSA's Brief at 7 (asserting that ALPA's Section 60 payments "allowed Hopkins to pursue, for almost two years, a small business . . . that never resulted in a dollar of profit").  However, TSA's only potentially legally cognizable interest with respect to Captain Hopkins' employment after his discharge was that he make a reasonable effort to mitigate his damages.  The System Board found that he did so, holding that Hopkins "fully satisfied his duty to mitigate backpay damages" through determined self-employment and by obtaining a position with Spirit in late 2006.  JA VII at 1170-71, 1173; JA VIII at 1205.  TSA does not challenge those binding findings

36

on this appeal. Accordingly, the Section 60 payments did not injure any legal right of TSA, and TSA lacks standing to challenge their legality.

TSA also fails to show that its claimed injury is fairly traceable to the Section 60 payments. No record evidence shows that Captain Hopkins would not have engaged in self-employment, or that he would have been able to obtain paid employment, absent the Section 60 payments. *See* JA VIII at 1259; JA II at 187-JA III at 323, *passim*; *compare United States. v. Metropolitan St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (possibility that government enforcement action would increase sewer rates is insufficient to support standing); *Nolles v. State Comm. for Reorganization of School Dists.,* 524 F.3d 892, 901 (8th Cir. 2008) (claim that statute potentially increased property taxes was conjectural and did not support standing); *Wilcox Elec., Inc. v. FAA*, 119 F.3d 724, 728-29 (8th Cir. 1997) (contractor removed from project due to poor performance lacked substantial chance of obtaining similar contract and thus lacked standing to obtain review of manner in which second contract was awarded).

> b. <u>TSA is outside the zone of interests protected by Section 503(a) of the LMRDA.</u>

TSA lacks prudential standing because it is outside the zone of interests protected by Section 503(a). "Whether a plaintiff's interest is 'arguably . . . protected . . . by the statute' within the meaning of the zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question . . . but by

Appellate Case: 10-1700     Page: 49     Date Filed: 07/13/2010 Entry ID: 3682963

reference to the particular provision of law upon which the plaintiff relies."
*Bennett*, 520 U.S. at 175-76.  Thus, *Rosebud Sioux Tribe v. McDivitt*, 286 F.3d
1031, 1037 (8th Cir. 2002), held that a lessee lacked prudential standing to mount a
statutory challenge because his interests in construction and operation of a pork
production facility on leased tribal trust land were outside the zone of interests
regulated by the statutes that were enacted to protect Indian interests.  *See also
Davis*, 383 F.3d at 768 (plaintiff lacked standing under state private attorney
general statute because her suit did not benefit the public).

Section 503(a) applies to unions and their members, not to employers.  It
seeks to:  (1) prevent union officers and employees from stealing from the union
treasury; (2) ensure that union funds are held "solely for the benefit of the
organization and its members[;]" and (3) prompt union officers and employees to
"refrain from dealing with such organization as an adverse party or in behalf of an
adverse party in any matter connected with [their] duties and from holding or
acquiring any pecuniary or personal interest which conflicts with the interests of
such organization[.]"  29 U.S.C. § 501(a).  *Accord* TSA's Brief at 20.  TSA is not a
member of ALPA and thus is outside of the intended protection of the statute.
Rather, as the Board noted (JA VII at 1174), TSA is an employer who, having
wrongfully discharged a union officer, now seeks to pervert the statute to penalize
a union for protecting its pilot-officers -- with the effects that TSA might escape its

Appellate Case: 10-1700     Page: 50     Date Filed: 07/13/2010 Entry ID: 3682963

backpay obligations and in the future more successfully intimidate union officials and even discourage pilots from serving as union representatives. Such a cynical, bizarre claim to standing must be rejected.

      c.    <u>TSA has waived any right to assert prudential standing</u>.

TSA also has waived its right to assert prudential standing. ALPA raised the issues of constitutional and prudential standing below, but TSA never explained how it had prudential standing. *See* JA VII at 1296-97 and 1306-20, *passim*.

"'Absent exceptional circumstances[,]'" the Eighth Circuit "'will not consider arguments raised for the first time on appeal.'" *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010) (quoting *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005)). A party "cannot assert arguments that were not presented to the district court in opposing summary judgment in an appeal contesting an adverse grant of summary judgment." *Cole v. UAW, Local 110*, 533 F.3d 932, 936 (8th Cir. 2008). These principles apply to a party's failure to raise arguments in favor of jurisdiction generally or standing in particular (at least where the court does not raise the issue *sua sponte*). *See United States ex. rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1518-19 n.2 (10th Cir. 1996) (declining to hear waived arguments in favor of jurisdiction); *Association for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 243 n.4 (5th Cir. 1994) (on appeal

Appellate Case: 10-1700    Page: 51    Date Filed: 07/13/2010 Entry ID: 3682963

from dismissal based on lack of standing, Court of Appeals would not consider new legal arguments or new documents in support of standing that were not presented to district court).

No exceptional circumstances exist here. ALPA squarely raised the issue below of TSA's lack of prudential standing, but TSA deliberately declined to respond. Accordingly, TSA has waived its right to argue in favor of its prudential standing, and its appeal must be dismissed.

## CONCLUSION

For the above reasons, the Court should affirm the decision of the District Court enforcing the System Board's backpay award.

Dated: July 9, 2010   Respectfully submitted,


/s James K. Lobsenz_____
JAMES K. LOBSENZ (DC Bar No. 432654)
MARCUS C. MIGLIORE (DC Bar No. 411674)
Air Line Pilots Association, Int'l
535 Herndon Parkway
Herndon, VA 20170
Telephone: 703) 481-2423
jim.lobsenz@alpa.org
marcus.migliore@alpa.org

Attorneys for Plaintiff-Appellee
Air Line Pilots Association, Int'l

40

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
**Certificate of Compliance with Type-Volume Limitation,**
**Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

   this brief contains 9,217 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 SP3 in 14-point Times New Roman font.

s/ James K. Lobsenz

JAMES K. LOBSENZ
Attorney for Plaintiff-Appellee
   Air Line Pilots Association, Int'l

Dated:  July 9, 2010

41

# CERTIFICATE OF SERVICE

I certify that on July 9, 2010 two copies of the foregoing document and a CD with a pdf version of same were served via FedEx 2-day delivery upon:

David J.A. Hayes, III, Esq.
Vice President & General Counsel
Trans States Airlines, LLC
11495 Navaid Road, Suite 340
Bridgeton, MO 63044
Phone: (314) 222-4317

and

Norman A. Quandt, Esq.
Ford & Harrison
271 17th Street, Suite 1900
Atlanta, GA 30363
Phone: (404) 888-3845

Counsel for Defendant-Appellant
Trans States Airlines, LLC

s/ James K. Lobsenz
JAMES K. LOBSENZ

42